**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 95-31061**
_____


**MAX WILLIAM KENDALL; PATRICIA KENDALL,**

**Plaintiffs-Appellants,**


**VERSUS**


**JEFFREY C. CALMES, ET AL.,**

**Defendants,**

**JEFFREY C. CALMES,**

**Defendant-Appellee.**


_____

Appeal from the United States District Court
For the Middle District of Louisiana
(CA-94-54)
_____
August 8, 1996


Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges

PER CURIAM:[*]

Plaintiff-appellant Max William Kendall appeals a grant of
summary judgment against him in this legal malpractice claim. We
agree with the district court that Kendall's deposition testimony

_____

[*]Pursuant to Local Rule 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in Local Rule 47.5.4.

proves that he did not subjectively believe that defendant-appellee Jeffrey C. Calmes was representing him on his dental implant products liability claims. Accordingly, no attorney-client relationship existed and, under Louisiana law, Kendall cannot recover on his legal malpractice claim. We therefore affirm the district court's grant of summary judgment.

## BACKGROUND

Kendall brought this legal malpractice suit against Calmes, claiming that Calmes negligently represented him in a dental malpractice and product liability suit. Kendall has had great difficulty with his right temporal mandibular joint ("TMJ"). In late 1987 Kendall underwent oral surgery on his TMJ. The oral surgeon, Dr. Richard Scott, inserted a temporary TMJ implant. Several months later, Dr. Scott removed the implant. A year later, Dr. Scott performed another surgery on Kendall's TMJ. Between late 1989 and mid-1990, Dr. John Kent, an oral surgeon, performed three additional operations on Kendall's TMJ. In 1991, a third oral surgeon, Dr. Louis Mercuri, performed a total right TMJ replacement using an implant. In March 1992, Dr. Mercuri again operated on Kendall and removed the prosthesis. Since August 1992, Kendall has been treated by Dr. Larry Wolford and endured several surgeries to correct his TMJ problems.

Dissatisfied with the results of his TMJ treatment, Kendall

hired Calmes as his attorney in 1991. The contract of employment states that Calmes was hired to represent Kendall on "claims arising out of an [*sic*] Medical Malpractice Oct 87, May 90. . . ." In October 1991, Calmes told Kendall that he was terminating the representation because he could not identify any malpractice in his TMJ treatment. Calmes advised Kendall to get a second legal opinion and wished him the best of luck.

In February 1992, Kendall retained attorney Frank Ferrara to handle his dental malpractice claims. In May 1992, Kendall wrote Calmes asking to "retain" Calmes to "get a total complete deposition from Doctor Mercuri." Calmes refused, saying "I can not represent you."

In January 1994, Kendall filed suit against Calmes, alleging that Calmes was negligent in failing to properly investigate and prosecute Kendall's dental malpractice and products liability claims. Specifically, Calmes failed to realize that the TMJ implants Kendall received were defective.

Calmes filed a motion for summary judgment, arguing that no attorney-client relationship existed with Kendall regarding any products liability action. The district court granted Calmes' motion for summary judgment. Kendall filed a timely appeal.[1]

---

[1]The district court granted summary judgment on four grounds. Kendall, however, only appeals the district court's finding of no fact issue as to Calmes' representation on the products liability claim. Kendall, therefore, has waived all other issues.

## DISCUSSION

The elements of a legal malpractice claim under Louisiana law are (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss to the client caused by that negligence. *Finkelstein v. Coller*, 636 So.2d 1053, 1058 (La. App. 1994). "The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists." *Id*.

In his deposition in this case, Kendall admitted that he never expected Calmes to represent him with regard to possible products liability claims. Specifically, Kendall testified:

> Q    So at that point I mean you were not expecting [Calmes] to represent you concerning anything with Dr. Mercuri, correct?
>
> A    No, not whatsoever because I -- because I had learned of the state guideline. . . . [A]s of August 13th, 1991, I knew then that [Calmes] could not represent me anything [*sic*] out of the State of Louisiana.
>
> * * * *
>
> Q    And you did not expect at the time that you signed that August '91 contract . . . for [Calmes], a Louis

4

iana lawyer, to go up to Michigan to litigate whether or not Dr. Scott's treatment and those implants were proper or improper, did you?

A   No, I didn't expect him to go beyond his bounds because he couldn't.

* * * *

Q   You did not expect [Calmes] to pursue the case either against Vi-Tech or Dow Corning concerning implants done by Dr. Scott, did you?

A   As far as Dow Corning, I did not expect Jeff to get involved with that, no. Because that was done in Michigan.

Based on his sworn deposition testimony, it is clear that

Kendall did not have a subjective belief that Calmes would represent him in the products liability actions. Our law is clear that a litigant cannot create a fact issue by contradicting his own deposition testimony without explaining his prior statement. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n.23 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 136 (1992). Under certain limited circumstances a party may create a fact issue by explaining the incongruity. *Id*. This is not such a case. Kendall has failed, either at the district court level or on appeal, to even mention this deposition testimony, let alone explain it. Kendall has given us no reason to doubt his sworn statement that he did not believe Calmes would represent him on the products liability actions.

Therefore, there is no attorney-client relationship as to the products-liability actions and, under Louisiana law, no legal malpractice. Accordingly, the district court's grant of summary judgment is **AFFIRMED**.